This is N. Ray Orinda, Intellectual Properties. Mr. Coffin, I see that you reserved three minutes for rebuttal. That's correct, Your Honor. Okay, you may proceed. Thank you, Your Honor. May I please support? Claim 2 of the 560 patent is not anticipated by Takagi because the board erred in construing the claim, and when the claim is properly construed, Takagi does not teach the claimed reproduction steps. In particular, it does not teach the two checking steps in the claimed reproduction method. As really a question of claim construction, the board erred when it construed the claim so broadly as to encompass not only the reproduction process in Takagi, but also the initialization process,  The board didn't really set forth a specific claim construction, but we're inferring that because of what it found for anticipation. Did you argue to the board a specific claim construction that would indicate why a prior art system that does the double checking but as part of two somewhat distinct processes that run in seriatim would not be within your claim? We argued that the claim had to be considered in a series of steps bounded by the reproduction request at the beginning and the production of data at the end, I believe. You find that statement, I cited it in our opening brief and also at page 8923, I believe, of the appendix. Because the board did ask whether order mattered, and after some waffling in the opening of the question, I answered to the affirmative that the steps indicated require a certain particular order because of the nature of the steps that are recited. For example, the first checking step is recited as occurring upon receipt of the reproduction command. So obviously, to conduct that step, you must first receive the reproduction command. Following that, the results of that check are stored in memory. Again, without the check having occurred, you have nothing to store in memory. And the claim proceeds throughout leading to ultimately the data from the track of interest being sent through the system processing means to the main processing means for use. I have a hard time understanding how, if all these steps happen in the same process, that they all happen in the same process, how the pattern would work. Can you explain that? Well, it's a process for reproduction. So the patent describes a process for reproduction in column 7, the 560 patent, in column 8. And that's shown in flowchart form in figure 8. But what it does is it receives a command from the processor. That's one step? That's one step. It checks to see if the target sector is a bad sector. It stores information in the storage means in accordance with that result. It then reads information from mapping sectors of a block of the optical disk to which the target sector belongs and stores that read information in mapping memory. Then there's the step of checking whether said target sector is the bad sector. If it is a bad sector, it reads the replacement sector in the center block of the optical disk and updates the mapping sector information in the mapping memory. It then seeks the target sector if it has checked that the target sector is normal. You've identified a number of steps. And your argument is that they all occur within the same process? It's a reproduction process. So it's a process consisting of multiple steps. Starting with a reproduction command that says, reproduce the data in track 40, and ending 10 steps later with the data from track 40, either from the original track 40 if the data in the original track 40 is good, or from the replacement track if the data in track 40 is bad. Why isn't the identification of, let's say, the bad data or defective data and the replacement or the repair of that data, why isn't that two different processes? It's part of a single reproduction process. Your Honor, if you view it as reproducing the data, the computer or the DVD player says, get track 40, and this is a process for reproducing track 40. It goes and looks for track 40. It reads track 40 to see if it's good. It does all these checking steps. It then moves the head. The head actually reads it. The data is demodulated. It is error corrected, and then it is output to the processor. And that's a multi-step process for reproduction of data. It is similar in many ways to the multi-step process disclosed for reproducing data into Coggy. I see that as a multi-step process, but multi-process with the pen, it seems that one process is identifying the defective track or the defective data, and then another process is to correct it. And looking at the pen, they just don't seem to be the same process. I think it's part and parcel of a continuous process from the reproduction command to the output command. In other words, the process of reproduction includes all these steps, and there are 10 steps to it, and it's described in the patent in columns 7 and 8 and figure 8, and it is a 10-step process for doing reproduction. That's how the patent describes it. The patent doesn't describe it as a separate checking process. There's no need to check until you know what track you're going to read. And so there's not sort of an abstract interest in knowing in advance what sector is bad. It's when I need to read sector 40, I go and look and see if sector 40 is bad. And if sector 40 is bad, then I make a note of it, and I get the replacement data, and I output the data. If sector 40 is not bad, then I simply output the data in sector 40 as the main process originally asked me to do. Does the specification actually provide a basis for a single process or the same process? The specification, and it starts on page 823 of the appendix, it starts at column 7 of the appendix. And I'm sorry, I've got the tachogny. Coincidentally, they both start at column 7, their own column 7. So while you're there, find me the limitation, a same process limitation. Well, referring to figure 8, there is shown a flowchart illustrating a method for reproducing optical information in accordance with the present invention. That's 823, the 560 patent, column 7, line 52. It then proceeds to describe the process in figure 8, and figure 8 is at page A19 of the appendix, all the way through the remainder of column 7, down through approximately line 41 in column 8, where the error-corrected data is output. And so the patent itself describes the process as a method of reproduction with a defined starting point and a defined ending point involving a series of steps. It describes it in words in the specification at column 7 and 8. There's no limitation that it's the same process, that all the steps that you describe are in one process. And that's what your argument today is then? Yes, my argument today is that claim 2, which is a method of reproduction, and perhaps we may be talking past each other, Your Honor, in the words process. Claim 2 is a method of reproduction. There are a series of steps within that method of reproduction. I suppose that each of those individual steps could be considered an individual sub-process, if you will, but the claim itself is a method of reproduction that has a beginning and has an end. And the beginning is the request that says reproduce track 40, and the end is when the data from track 40 is reproduced and sent to the main processing units. And that's the constraint claim. And if you look at the corresponding reproduction process in Takagi, because there is a reproduction process disclosed in Takagi, it doesn't disclose the same steps. It doesn't, in particular, and that's at column 7 on page 845 of the appendix, Your Honor, it discloses a method of reproduction. And much like the method of reproduction at issue, there are a series of steps, but the series of steps are not the same. And because they are not the same, Your Honor, there can be no anticipation. Anticipation requires... Can I just double-check something with you? You said, I think, that your key point is that both of the checkings have to occur after a reproduction command. That's correct. Is that not true in Takagi? That is not true in Takagi. One of the... Because the way Takagi works is if you turn on the disk player or if you put a new disk in, it conducts a series... It conducts read, write, and erase commands, depending on the nature of the disk. It's part of an initialization process. The PTO has construed this as it reads every track and checks every track on the disk. I'm not sure that's entirely correct, but the standard review being what it is, I will accept it for these purposes. But then it stops, and then later there is a separate reproduction command, and the separate reproduction command, again, says get track 40. There's no process upon receiving the command that says get track 40 to check track 40, to undergo the two checks. There's simply a single check in the column 7 process, and that's the apples-to-apples comparison. So, in effect, they read 1, then they read 2, then they read 3, they continue on until 40, 50, 60, 100, and then they stop, and at some later point, a reproduction command is given, and then a series of steps follow. And in that reproduction process, there are not the required two checks. You're close to your rebuttal time. I'm close to my rebuttal time, and unless the court has further questions, I will desert. Thank you. Thank you. Attorney Shilfen, is that correct? May it please the Court. All of the steps of Claim 2 are disclosed in Takagi in the same order. What about after a reproduction command? I take it that that's the gist of his argument, that in Takagi, the first checking does not occur after a reproduction command. Respectfully, I disagree. The first check does occur after a reproduction command. It's called a read command. The parties agree that a read and reproduction are the same thing. The board said, in both terms. And so the read command happens as soon as you insert a disk or start up the computer. There's a read command to read all of the sectors of the disk, and then there's a check that occurs with all of the sectors of the disk. And then there is the Column 7 routine, the reproduction routine, where there is another check. Is there another reproduction or read command at that stage? There is, yes, Your Honor. So one way of stating the argument, for whatever it's worth, is that there has to be, under the proper interpretation of the claim language, two checks after and in response to a single reproduction or read command without an intervening reproduction command. Right, and that's how I read their argument. And that's where our response is that the intervening steps that might occur don't defeat anticipation. And we cited a number of cases that talk about additional steps not defeating anticipation. Arenda pointed out that all of those steps were added either at the beginning or the end of the claim. But this court's case law is equally clear that intervening steps in the middle of a claim also don't defeat anticipation. And a case that shows that it's in the infringement context, but it's IGP v. Valley Gaming, which is the cited 659F3-1109 at 1117-18, where the court held that it was in the infringement context, but it was the same analysis that an intervening step in the middle of a claimed method also didn't preclude infringement. And in a case where the claim says comprising, it's clear that intervening steps aren't precluded. And additionally, Arenda doesn't really point out anything that makes any intervening steps, including an additional read command, change the sort of purpose of the claimed method or Tsukagi's method. They still are performing the same method. They're accomplishing the same thing, which is to check the target sector, put it into RAM essentially, and then check the stored RAM state of the target sector, whether it's good or bad, and go from there. They either use the original target sector if it's good or use the copy if it's bad. And I just wanted to add that the examiner also recognized that all of Tsukagi's steps are sort of part of one overall routine. The examiner described it as the overall connectedness of the various sub-procedures of the larger system of Tsukagi. And that's sort of the way that Tsukagi is designed to operate. If the Court has no further questions, I'll yield the remainder of my time. Yes, thank you. Is there anything in the language of the claim, definite articles or numbers or anything like that, that tends to support your view that both checks have to be in response to a single reproduction or reading command in a way that would exclude the scenario of having an intervening reading command? Well, the short answer is yes, I believe, Your Honor, that there are such use of definite articles in the claim in classic sort of claim drafting. We start with the initial checking step and after that we note that storing information into storage means in accordance with the checked result. And so there's a definite article referring to the checked result from the prior step. Reading information for mapping sectors of a block of an optical disk to which said target sector belongs, again, definite article referring back to the prior step. Checking whether said target sector is the bad sector. And it continues that way throughout the process. And this is not a scenario where you have a read command for Track 40 and then there's a pause and then there's a second read command for Track 40 that proceeds to do the rest of this process. As described in Takagi, the process is they check every track as described, at least the PTO's view of it is they check every track. So they go on past it. It's not just waiting for a read command. It's a separate process doing something different and then later a reproduction command comes. I think that strains the notion of comprising law beyond its fair bounds. Council referenced IGT versus Bali, which is new to come up with the notion that a new step in between two steps is encompassed within the notion of comprising. That's not the argument that we made in our brief. We didn't intend to argue that the step had to become before or after. If there was a description in Takagi of blowing dust off the optical head before seeking the track, we wouldn't say there's no anticipation because we don't have blowing the dust off the optical track even though it's in the middle. The problem here is that you've got one process that is separate and distinct from the other process. And when you look at the reproduction processes and you compare them, they're not the same. And that's the hallmark of anticipation here. And by trying to stretch comprising, they stretch it too far. If there are no further questions. Okay, thank you very much. That concludes today's arguments. We stand in recess. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m. Thank you.